DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, P.I.E. International, Inc., has appealed from the judgment of the Medina County Court of Common Pleas granting damages to Appellee, Versatile Tool Die. This Court affirms.
 I {¶ 2} Appellant and Appellee entered into a lease agreement on September 1, 1999. Appellee had previously occupied the leased space through a sublease with Classic Tube Machine, Inc., a company Appellee purchased. As a result of the lease, Appellee agreed to rent space in a portion of the building owned by Appellant for a period of three years. Shortly after the lease period began, Appellee alleged that the charges for electricity to the property were being improperly allocated by Appellant.
 {¶ 3} At the time the lease period began, two separate electric meters were on the property. Appellee agreed to pay the entire electric bill which was represented by the main meter on the property. In turn, Appellant agreed to credit Appellee's rent in an amount equal to Appellant's use of electricity as indicated by a monitor meter. The monitor meter read only the amount of electricity used by Appellant's portion of the building.
 {¶ 4} Appellee, however, maintained that the electricity was not being properly divided. Eventually, the electric company examined the setup of the meters and determined that a portion of the monitor meter was improperly connected and not recording the proper amount of electricity used by Appellant. Accordingly, Appellee alleged that Appellant had not given the proper amount of rent credit during the duration of the lease. As such, Appellant and Appellee agreed to additional credits on Appellee's rent with the amounts varying from month to month.
 {¶ 5} Appellee stopped paying rent to Appellant in November of 2001, but it remained on the premises until August of 2002. As a result, Appellant filed suit in the Medina Municipal Court for past due rent and utilities. Appellee filed a counterclaim in excess of the Municipal Court's jurisdiction and the matter was transferred to the Medina County Court of Common Pleas. On August 12, 2003, the parties presented testimony before a magistrate. The magistrate issued a decision finding that Appellee was entitled to judgment in the amount of $10,113.25. Appellant objected to the magistrate's decision, arguing that it was against the weight of the evidence. The trial court overruled Appellant's objections and entered judgment in favor of Appellee. Appellant has timely appealed, raising one assignment of error for our review.
 II Assignment of Error
"The Judgment of the trial court is against the manifest weight of the evidence."
 {¶ 6} In its sole assignment of error, Appellant has argued that the judgment of the trial court was against the manifest weight of the evidence. Specifically, Appellant has asserted that the trial court erred in its computation of damages under the lease. This Court disagrees.
 {¶ 7} When an appellant asserts that a civil judgment is against the manifest weight of the evidence, this Court's standard of review is the same as that in a criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a judgment is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Electricity Use
 {¶ 8} Appellant has first argued that the trial court's determination of the proper amount of rent credit is against the manifest weight of the evidence. First, Appellant has asserted that Appellee has waived any claim regarding the rent credits by accepting credits in the past in lower amounts than those claimed in the trial court. We find that such a claim lacks merit.
 {¶ 9} Waiver entails the voluntary relinquishment of a known right or intentionally doing an act inconsistent with claiming that right. Mondlv. Mondl (Dec. 5, 2001), 9th Dist. No. 20570, at 6. While accepting a rent credit each month due to alleged miscalculations of the electricity costs, Appellee continued to object to the amount throughout the term of the lease. As such, Appellee has not voluntarily relinquished its rights or done any act which is inconsistent with claiming that right. Accordingly, the trial court did not err in refusing to accept Appellant's waiver argument.
 {¶ 10} Appellant has also argued that the trial court erred in discounting the testimony of Appellant's president, Ted Trikilis, with regard to the use of electricity by his company. It was undisputed that without a properly functioning monitor meter, it is not possible to determine the exact amount of electricity used by Appellant. Therefore, both parties presented testimony regarding the amount of electricity used by Appellant.
 {¶ 11} In support of its claim, Appellant presented the testimony of Mr. Trikilis. Mr. Trikilis' method of apportioning the electricity was based on the sales of his company. Essentially, Mr. Trikilis testified that accurate meter readings existed prior to a lightning strike. As such, he used the monthly costs of electricity from the year in which he alleged that the meter worked properly as a base line. He then adjusted the electric totals based upon fluctuations in Appellant's gross sales.
 {¶ 12} In response, Appellee presented the testimony of its president, Custer Ogden. Mr. Ogden testified that he suspected early in the lease that Appellant's use of electricity was not being properly recorded. To investigate, he began turning the power off to Appellee's portion of the building for certain time spans, and then recording the use which was solely attributable to Appellant's portion of the building. Based upon Mr. Ogden's calculations, Appellant was responsible for nearly 72% of the cost of the electric bills.
 {¶ 13} Initially, we note that this Court defers to the trial court in determining credibility because the trier of fact is in the best position to judge the credibility of witnesses. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80. Furthermore, this Court will not overturn a verdict on a manifest weight challenge simply because the trier of fact chose to believe one party's witnesses rather than Appellant's witnesses. Long v. Vamper, 9th Dist. No. 22166, 2005-Ohio-267, at ¶ 9. In the instant matter, the trial court chose to accept Mr. Ogden's calculations rather than Mr. Trikilis' calculations. As such, we cannot say that the trial court lost its way in finding that Appellee was entitled to judgment against Appellee for the underpaid electric bills.
Property Damage
 {¶ 14} In its complaint, Appellant also sought damages for the cost of repairing a fence that was located on the leased property. Mr. Ogden stated that he did not know how the damage had occurred and that prior to the instant litigation, Mr. Trikilis had never raised the issue of damage to the fence. Mr. Trikilis testified that he had "no knowledge of who damaged it." As such, we cannot say that the trial court lost its way in finding that Appellant had failed to demonstrate by a preponderance of the evidence that Appellee had damaged the fence.
Gas Heater
 {¶ 15} Appellant has next argued that Appellee is responsible for the cost of a gas heater that was placed in Appellee's portion of the property. The parties' lease provided "[t]hat the Lessor shall be responsible for maintaining the heating * * * and all other utilities necessary for the operation of a commercial building." It is undisputed by the parties that the heaters installed in the roof of Appellee's portion of the property were consistently in need of repair. Mr. Trikilis admitted that one of those heaters was not in proper working order when the new gas heater was installed and that at least three other repairs had been performed on the roof heaters. Based upon the plain language of the lease, this Court cannot say that the trial court lost its way in finding that the cost of the heater was properly allocated to Appellant.
Lights
 {¶ 16} Appellant has argued that Appellee failed to replace burnt out lights and repair damaged light fixtures when it left the leased space. Mr. Trikilis testified that all of the bulbs and fixtures were replaced prior to Appellee leasing the property. Mr. Ogden, however, testified that not all of the lighting was replaced prior to the lease beginning. He went on to testify that each of the lights that burnt out during the lease was replaced by Appellee. The magistrate also received into evidence a form signed by Mr. Trikilis indicating that the building was in good condition when Mr. Ogden returned the keys. As such, the trial court again was presented with conflicting evidence regarding the lights and light fixtures. Again, the trial court chose to believe Mr. Ogden's testimony. As noted, the trial court's decision to believe Appellee's evidence over Appellant's evidence does not warrant reversal on a manifest weight challenge. Long, supra, at ¶ 9.
Late Fees
 {¶ 17} Finally, Appellant has argued that the trial court erred in failing to award it late fees as a result of Appellee's failure to pay rent under the lease. In denying Appellant's claim for late fees, the magistrate found that the credit due to Appellee greatly exceeded the rent owed under the lease. Evidence from both parties indicated that to satisfy the electric bills, Appellant gave Appellee a credit on its rent. Based on the parties' prior dealings, the amount Appellant failed to properly credit Appellee was properly deducted from the rent owed by Appellee. Accordingly, Appellee's rent's obligations were extinguished by the credits owed due to Appellant's miscalculation of the electric costs. The trial court, therefore, did not err in finding that Appellant was not entitled to late fees under the lease.
 {¶ 18} Appellant's sole assignment of error lacks merit.
 III {¶ 19} Appellant's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, J., Batchelder, J., concur.